## JOHN WEAVER v. HOWARD E. SHEELER.

ERROR TO THE COURT OF COMMON PLEAS OF CHESTER
COUNTY.

Argued February 14, 1889—Decided March 4, 1889.

1. The lien of a mechanic or material man attaches to the title of him by whom the building is erected and to that alone, and if the building be erected for the holder of an equitable title, his equitable title alone is bound: Weaver v. Sheeler, 118 Pa. 634.

2. But if the person against whom the lien is filed, although the holder of the legal title, is but a mere depositary of it for the benefit of the person on whose order the materials are furnished and to whose account they are charged, the property will be bound by the lien filed.

(a) A member of a company contemplating incorporation purchased land by parol and paid part of the purchase money: the company went into possession and erected buildings: the incorporation being delayed, another member entered into written articles for the purchase of the land from the owner of the title.

(b) Afterward, on payment of the balance of the purchase money, a deed was made to one Weaver as a naked trustee for the company, without any personal interest in the transaction, and while the title was in Weaver a mechanics' lien was filed for material furnished on the order and account of the company: subsequently, letters patent having been granted, Weaver conveyed to the company.

3. In such case, the parol purchase under which the entry was made became a valid equitable title under the written articles and ripened into a legal title under the deed to Weaver, so that the latter united both titles in himself for the benefit of the company for whom the materials were furnished, and the lien was well entered.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 137 July Term 1888, Sup. Ct.; court below, No. 63 April Term 1886, C. P.

On March 19, 1888, the record in Weaver v. Sheeler, 118 Pa. 634, a writ of error to a judgment in scire facias sur a mechanics' lien, was remitted to the court below, with a judgment of reversal and a venire facias de novo awarded.

At the second trial on March 24, 1888, the plaintiff, called in his own behalf, testified that his business was that of a lum-

ber dealer, and he had furnished the lumber that went into the building described in the lien, at the instance of the Pennsylvania Granite Company.

Q. Upon what faith and credit did you furnish that lumber? Objected to.

By the court: Offer admitted; exception.[1]

It did not appear that the question was answered, but the witness produced his book of original entries, showing that the lumber was charged to the Pennsylvania Granite Company.

The facts upon which the cause was decided, sufficiently appear in the opinion of this court.

The court, FUTHEY, P. J., charged the jury and answered the points presented as follows:

This is what is known as a scire facias on a mechanics' lien. Mr. Sheeler, the plaintiff, filed a mechanics' lien on March 6, 1886, against John Weaver, the owner or reputed owner of certain real estate in Warwick township, consisting of a shed and ground, and the Pennsylvania Granite Company, contractors.

It appears from the evidence in the case that Messrs. Keim and Knauer, were the owners of a large tract of land in Warwick township, upon which there was a deposit of stone in the nature of granite, and that in 1885 a conversation occurred between Mr. Neall and Mr. Knauer, the latter apparently acting for himself, with reference to the purchase of a portion of the property where the stone was deposited. The conversation was in reference to the prospective purchase of about sixty acres of land, and at that time Mr. Neall paid Mr. Knauer ten dollars on account of the purchase money, telling him: "If this matter is carried out, that shall go as a part of the purchase money; and if not, you shall keep it for your trouble." There is testimony tending to show that the agreement was made for himself and other gentlemen, consisting of James E. Neall, Charles H. Barritt, Abraham Rex and Charles Vogel, forming what was known as the Pennsylvania Granite Company, but not incorporated at that time.

After the making of the agreement, a number of buildings were erected upon the premises, among which was the shed in question. The plaintiff testified that the lumber for which the

Charge of Court below.

lien was subsequently filed was purchased from him for the Pennsylvania Granite Company, that it was charged to that company, and that it went into the erection of the shed that was erected. The bill, not having been paid, a mechanics' lien was filed against John Weaver, as its owner or reputed owner, together with the real estate appurtenant thereto, under the mechanics' lien law, and the Pennsylvania Granite Company.

In order to establish the validity of a mechanics' lien, it is necessary that the person against whom it is filed shall be the owner of the property at the time of the filing of the lien, having either a legal or equitable interest in the premises, and that the person named in the mechanics' lien as the owner shall be that owner, or have an interest by possession from the person who owned the property at the time the mechanics' lien was filed. [The contract for the purchase was made with Knauer and Keim, who owned the legal title at the time the lumber was charged to the Pennsylvania Granite Company. It is alleged that the contract for the lumber was made with that company, composed of the gentlemen named, and that Mr. Neall made the contract in their behalf. The lien, however, was filed against John Weaver, and the question to be determined is whether he owned the title, if there was a title obtained by parol agreement from Messrs. Keim and Knauer.][4]

The first question in the case for solution is whether the Pennsylvania Granite Company, through Mr. Neall acting for them, made an agreement with the owners of the land, by which they obtained an equitable interest in the property. If they did not, the plaintiff cannot recover in this action, because his claim to recover is based upon that allegation. If they did, however, make such an agreement with the owners of the land, by which they obtained title to the property, the next question is, whether Mr. Weaver, against whom the lien was filed, held the title, at the time the lien was filed, which the Pennsylvania Granite Company had obtained from Messrs Keim and Knauer; because, if the title of Mr. Weaver was an independent one, obtained by the purchase of the property directly from Keim and Knauer, the lien could not have been filed against him, for it would have been a direct contract between Mr. Weaver and the owners of the legal title, who had nothing to do with the erection of the buildings.

It also appears that in the fall of 1885, presumably after the buildings had been erected, a written agreement was entered into, dated October 10, 1885, between Messrs. Knauer and Keim, who owned the legal title, and Charles Barritt, whereby the latter became the purchaser from them. Mr. Barritt was one of those gentlemen composing the Pennsylvania Granite Company, the purchasers from Knauer & Keim, who erected the buildings in question. If such was the fact, according to the testimony, then this agreement was also made with him. [You will determine whether this was the carrying out of the parol agreement which had been theretofore made; in other words, whether these gentlemen, after the purchase of the property from Knauer & Keim, proceeded to erect the building, and whether the article of agreement was simply the reduction to writing of the parol agreement.][2] If you find that such was the fact, then Mr. Barritt, by the article of agreement, simply had in writing the title which had been theretofore given or placed upon paper, the equitable title which had already existed by virtue of a parol agreement. If you find that such was the state of facts, you will then naturally inquire as to how Mr. Weaver became the owner of the title.

By the articles of agreement, the conveyance was to be made to Mr. Barritt by Knauer and Keim, but in reality it was made to Mr. Weaver by a deed dated the 30th of October. The article of agreement was dated on October 10th, and in the latter part of the same month a deed was made to Mr. Weaver and not the company. Mr. Weaver testified that he was simply acting in the matter at the request of Mr. Sparhawk,. who appears to have been counsel for these parties; that he had no interest in it; that he did not purchase from Knauer and Keim; that he did not know anything about it; that he did not have anything to do with it in any manner, shape, or form, except as he was requested to take the title and hold it until the Pennsylvania Granite Company could be incorporated; that application had been made to the governor for letters patent, which had not then been issued; that he had taken title and given certain mortgages; that he held the title until the organization of the Pennsylvania Granite Company, and then transferred it to the Pennsylvania Granite Company; that this was all done by request; that he was not a purchaser,

except in this particular, and that he held the title until the company could be incorporated.

If this testimony is a correct version of the transaction, Mr. Weaver was not an independent purchaser from Knauer and Keim. He simply took the place of Charles H. Barritt and the Pennsylvania Granite Company, by virtue of their agreement, the title being in him only to that extent, and he occupying the same position that Mr. Barritt was entitled to occupy. If, however, the property was purchased, by virtue of a parol agreement, from Messrs. Knauer and Keim by Mr. Neall, the latter acting for the Pennsylvania Granite Company, composed of four gentlemen, of whom Mr. Barritt was one, and they purchased the lumber for the erection of the building, the title afterwards reverting to Mr. Barritt, under certain articles of agreement, Mr. Weaver simply holding the title which Mr. Barritt held, in order that it might be preserved until the company became incorporated, then Mr. Weaver held an equitable title which belonged to the Pennsylvania Granite Company, under their parol purchase from Messrs. Knauer and Keim, in which event his title would rise no higher than theirs, and would be the subject of a mechanics' lien. If Mr. Weaver had purchased directly from Messrs. Knauer and Keim, then a mechanics' lien could not have been filed against him, but if he simply held the title that was in Barritt, and Barritt held the title that was made by parol agreement with Knauer and Keim, on the faith of which the buildings were erected on the premises, then Mr. Weaver's title would be no greater than that of the Granite Company, or that of Barritt and Neall, and the lien could be properly filed against them.

These are all questions of fact for your consideration, but there are other questions raised by the issue, independent of the question of title. One of these questions has reference to the fact as to whether the lien was filed on the faith of the building. [The mechanics' lien law requires that material should be furnished on the faith and credit of the building against which the lien is filed. It is not necessary that this fact should be stated on the books of the person furnishing the material, but it is the duty of the jury to determine whether the material was furnished on the faith and credit of the building. Presumably it was furnished on the faith and credit of

the building.] ³  If it was not, the lien was not properly filed; so that the first question for you to determine was whether the material was furnished on the faith and credit of the building.    There were a number of buildings erected on the premises, for which the plaintiff furnished material.    The lien in this case is filed for such portion of it as is supposed to have been used in the construction of the building that has been designated.

If you find that the plaintiff is entitled to recover, the next question for you to determine has reference to the amount he should receive.    He claims that he is entitled to recover the amount for which the lien was filed.    He has detailed the size of the building, the character of the materials that were furnished on the faith and credit of the building, as he alleges, for which he filed a lien to cover the amount of his bill.    You will observe that lumber was furnished for a number of buildings, and, therefore, in filing the lien, it was necessary to ascertain the amount of lumber used in the construction of the building against which it was filed.    The plaintiff testified that he carefully ascertained the amount of lumber, and filed his lien for that particular material.    The defendant however, testified that he had the building examined and measured, and that at least forty dollars' worth of the material charged by the plaintiff was not used in that building.    You will consider all the testimony bearing upon this disputed point, and determine the amount of material that was furnished by the plaintiff for the building.    It is a question of fact solely for your consideration.

If you find that the property was purchased for the Pennsylvania Granite Company, under a parol agreement, that articles of agreement were afterwards made for the purpose of carrying that parol agreement into effect, that the title was made to Weaver, in pursuance of that agreement, and that he was simply to hold the title until the company was incorporated, the mechanics' lien, I instruct you, was properly filed. If you should so determine these facts, you will then consider the second question in the case, whether the material was furnished on the faith and credit of the particular building, and if so, ascertain what amount of material the plaintiff furnished in its construction.    If you find, however, that Mr. Weaver

did not hold the title of the purchasers from Keim and Knauer, upon the faith of which the plaintiff furnished the material, I instruct you that the plaintiff would not be entitled to recover. The person against whom a lien is filed must be not only the owner of the title, but the one for whom the building was erected, or otherwise there cannot be a recovery. If you find that John Weaver held the title, that he was the person who had the equitable interest in the property, and the one for whom the lumber was furnished and the building erected, I instruct you that the lien was properly filed against him, but that if he did not hold the title, and was not the person having the equitable interest in the property, and the one for whom the lumber was furnished, the plaintiff cannot recover.

I have been requested by the defendant to instruct you upon the following points, viz.:

1. That the transaction between James E. Neall and Davis Knauer, having been with reference to an uninclosed and unimproved tract of woodland, the boundaries of which are undefined, of which tract Davis Knauer had title to only an undivided half, is too slight and imperfect to amount to a title, or be subject to a mechanics' lien.

Answer: This point is disaffirmed.[5]

2. If the jury believe that John Weaver purchased his title from Davis Knauer and Josiah Keim by the deed dated December 30, 1885, and that the said deed to the said John Weaver was made in pursuance of a carrying out of an agreement dated October 10, 1885, between Charles H. Barritt and the said Davis Knauer and Josiah Keim, for the purchase of land on which he erected the improvements here in question, then said title is not connected with the lien in suit, and the verdict of the jury should be in favor of the defendant.

Answer: I have already answered this. If this was a purchase of Mr. Weaver from Charles H. Barritt, then the further question arises, whether Charles H. Barritt was one of the persons who made a purchase from Keim and Knauer, and whether he was an equitable owner, or one of the equitable owners of the title at the time this lumber was furnished for this building. If he was, then the lien can be properly filed against Weaver.[6]

3. There is no evidence in this case to connect the lien in

this suit with the title of John Weaver; and, in the absence of such evidence, a verdict cannot be rendered against said Weaver, or his title.

Answer: This point is disaffirmed. There is evidence to connect the lien in suit with the title of John Weaver for a consideration.[7]

4. Under all the evidence, the verdict should be for the defendant, the said John Weaver.

Answer: This point is disaffirmed. I submit the questions upon the facts to the jury.[8]

The jury returned a verdict in favor of the plaintiff for $230.83. Judgment having been entered, the defendant took this writ, assigning as error:

1. The admission of the plaintiff's offer.[1]

2-4. The parts of the charge embraced in [ ] [2 to 4]

5-8. The answers to defendant's points.[5 to 8]

*Mr. R. Jones Monaghan* (with him *Mr. J. Frank E. Hause, Mr. H. T. Fairlamb* and *Mr. John Sparhawk, Jr.*), for plaintiff in error:

1. It was clearly proper and necessary for the plaintiff to show by his books and conduct, or the other facts of the case, that he furnished the material on the faith and credit of the building; but it was not proper for him to state the secret working of his mind, which it is not pretended that he communicated to the defendants, or to any one on their behalf: Spencer v. Colt, 89 Pa. 320; Juniata B. Ass'n v. Hetzel, 103 Pa. 512; Cullmans v. Lindsay, 114 Pa. 171; Cake v. Pottsville Bank, 116 Pa. 271; Thomas v. Loose, 114 Pa. 48. It was also error in the general charge to say to the jury, "Presumably it was furnished on the faith and credit of the building." By the very terms of the mechanics' lien law, this question of fact was an essential part of the case, and required proof at the hands of the plaintiff: Church v. Davis, 9 W. 304; Dickinson College v. Church, 1 W. & S. 465; Church v. Allison, 10 Pa. 414; Barbier v. Smith, 38 Pa. 296; Wolf v. Batchelder, 56 Pa. 88; Singerly v. Doerr, 62 Pa. 14; McMullin v. Gilbert, 2 Wh. 277; Hills v. Elliott, 16 S. & R. 57; Kelly v. Brown, 20 Pa. 447; Van Billiard v. Nace, 1 Gr.

234; Weaver v. Sheeler, 118 Pa. 634; Blessing v. Miller, 102 Pa. 49.

2. The points presented on behalf of the defendants distinctly raised the question whether or not Neall, under his parol agreement with Knauer, had such an equitable title as could be bound by the lien in controversy. The tract was wild, uninclosed woodland; it was part of a much larger tract; the acreage was not known to either Knauer or Neall; it was owned by Knauer and Keim in common, and the materials furnished by plaintiff were all furnished before the written agreement of October 10, 1885; before Weaver obtained the legal title; and until the execution of the deed to Weaver, the legal title remained in Knauer and Keim. Under the facts of the case there can scarcely be a question that Neall had no title that he could have enforced against the owners of the land under the parol agreement: Robertson v. Robertson, 9 W. 41; Allen's Est., 1 W. & S. 389; Frye v. Shepler, 7 Pa. 94; Charnley v. Hansbury, 13 Pa. 21; Brinser v. Anderson, 10 Cent. R. 776; Moore v. Small, 19 Pa. 469; Overmeyer v. Koerner, 81* Pa. 517; Detrick v. Sharrar, 95 Pa. 521; Miller v. Zufall, 113 Pa. 317. Moreover, whatever possession was taken by Neall, was taken in pursuance of the parol contract with Knauer alone, and it must have been such possession as Knauer, one of two tenants in common, could give. But exclusive possession taken and kept in pursuance of the contract is an indispensable ingredient in every case: Bowers v. Bowers, 95 Pa. 480; and this indispensable ingredient prevents one tenant in common from selling by parol to his co-tenant in possession: Spencer and Newbold's App., 80 Pa. 317; Chadwick v. Felt, 35 Pa. 306.

*Mr. William M. Hayes*, for the defendant in error:

1. Weaver never had any personal interest in the land, but simply took the legal title from Knauer and Keim to accommodate Neall, who held the equitable title from them. Neall purchased from Knauer and Keim and paid $10 on account of the purchase money; it was at the solicitation of Neall, and others interested with him in the Pennsylvania Granite Company, that Weaver took the legal title, to hold until the company should be incorporated. The testimony establishes this.

2. Although the question, "Upon what faith and credit did you furnish that lumber?" was permitted by the court below, no answer was pressed for, and none was given. But authority can be given to sustain the ruling: Wolf v. Bachelder, 56 Pa. 89; Singerly v. Doerr, 62 Pa. 9; Hommel v. Lewis, 104 Pa. 465.

3. Nor did the court err in instructing, "Presumably it was furnished on the faith and credit of the building:" Van Billiard v. Nace, 1 Gr. 235; Noar v. Gill, 111 Pa. 492.

OPINION, MR. JUSTICE WILLIAMS:

It is conceded that the title to the tract of land in controversy in this case was, prior to 1885, in Knauer and Keim. In May of that year Neall went upon the land with Knauer, made an examination of its surface, and secured what was a mere verbal refusal of the tract at a price then agreed upon. This refusal bound no one and gave Neall no title of any sort to the land. He began, however, to organize a corporation, which was called the Pennsylvania Granite Company, to purchase the land on the basis of his verbal arrangement with Knauer and to open and operate a granite quarry thereon. When the organization had been agreed on but before actual incorporation, the company took possession of the land, erected sheds and other buildings upon it and began quarrying the granite. Sheeler alleges that he furnished materials for these buildings on the order of the granite company. When the time came for making the first payment to Knauer and Keim, the incorporation being still delayed, one of the members of the company, named Barritt, entered into written articles for the purchase of the land on October 10, 1885. The balance of the purchase-money was paid on the 30th of the same month and the deed, at the instance of the persons interested in the granite company, was made to Weaver who was a mere naked trustee for the corporation, without a particle of personal interest in the transaction. While the title was in Weaver the mechanics' lien in this case was filed by Sheeler. Not long after when the letters patent were obtained, Weaver conveyed to Pennsylvania Granite Company.

When this case was here before, 118 Pa. 634, there was nothing in the evidence to connect Weaver with Neall or Barritt or the Granite Company. The only relation he appeared to have

Opinion of the Court.

to the property was as the successor of Knauer and Keim in the legal title. What title the Granite Company had or what became of it did not appear. It was for this reason that the judgment was reversed and attention called to the rule that the lien of a mechanic or material man attaches to the title of him by whom the building is erected and to that only. If the building be the work of the holder of the equitable title his equitable title alone is bound. But the proofs which were then wanting are now supplied. Weaver is shown to have held no title of his own, but to have been a mere depositary of the title for the benefit of the Granite Company. The verbal permission under which Neall entered became a valid equitable title under the contract with Barritt and ripened into a title in fee simple under the deed of October 30, 1885, so that Weaver united the legal and the equitable titles in himself, at the time when the lien was entered, and held the complete title for the Granite Company under which the buildings were erected for which Sheeler furnished materials. Upon the facts as now presented we think the lien was well entered against Weaver.

But it is now urged that when the materials were furnished, the granite company had no valid title to the land and could not bind it by their contract. It is probably true that the company had no right to the land which it could enforce at law. Knauer and Keim might have refused to recognize their verbal understanding with Neall, but they did not. They treated it as binding and they carried it out in good faith. The Granite Company obtained the equitable title which they assumed to have when they took possession, and afterwards the legal title, and there is no legal reason for relieving them now from the payment of their honest debts contracted in the development of their own property.

The judgment is affirmed.