## Merritt, Appellant, *v.* Poli.

*Mechanics' liens—Subcontractor—Notice of intention to file lien—Service on architect outside of county—Act of June 4, 1901, P. L. 431—Person in possession of building.*

1. Service by a subcontractor of notice of an intention to file a mechanic's lien upon the architect of the owner outside of the county where the building is situate is not a sufficient service to meet the requirements of sec. 8 of the Act of June 4, 1901, P. L. 431.

2. On the trial of a scire facias sur mechanic's lien by a subcontractor where the plaintiff claims that he served notice of intention to file a lien upon the person in possession of the building, all the evidence tending to show the service of the notice, upon whom the service was made, and as to whether the party served was in possession, should be received. Evidence of this character must of necessity be introduced step by step; and it is error to exclude offers bearing on the question as a whole on the theory that it is necessary to first establish the fact that the party served was in actual possession before proof of service and other incidental matters can be admitted in evidence.

Argued Feb. 22, 1911. Appeal, No. 366, Jan. T., 1910, by plaintiffs, from order of C. P. Lackawanna Co., March Term, 1908, No. 983, refusing to take off nonsuit in case of Merritt & Company v. Sylvester Z. Poli, reputed owner

of the Poli Theater and Frank T. Ricca, contractor. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Scire facias sur mechanic's lien.  Before O'NEILL, J.

At the trial the case turned on whether a notice of an intention to file a lien by the plaintiff, a subcontractor, had been served either upon the architect of the owner in accordance with the requirements of the act of 1901, or upon a person in possession of the building.

When William Ingram, a witness for plaintiff, was on the stand, the following questions were asked him:

"Q. I show you a paper and ask you if you had that paper with you at that time, or if that is an exact copy of the paper that you had?"

Judge Kelly: We object to the question as incompetent.

"A. This is a copy of the paper."

Judge Kelly: We ask that the answer may be stricken out.

The Court: It may be stricken out.

Judge Vosburg: "Q. Can you tell whether this is one of the papers that you had with you?  A. Yes, this is a copy of the notice."

Judge Kelly: We ask that that be stricken out.

The Court: It may be stricken out.

Exception [4].

"Q. What efforts did you make to find Mr. Poli when you got to Scranton, Sylvester Z. Poli?"

Mr. O'Malley: We object to that.

The Court: The objection is sustained.

Exception [5].

"Q. Did you inquire from Frank Ricca, one of these defendants, as to the whereabouts of Mr. Poli that day?"

Mr. O'Malley: We object to that as grossly leading and asking for hearsay testimony.

The Court: The objection is sustained.

Exception [6].

"Q. Did you talk with Frank Ricca that day?  A. I

did. Q. Did you ask him anything about Mr. Poli? A. I did."

Mr. O'Malley: We object to that as immaterial, irrelevant and incompetent.

The Court: The objection is sustained.

Exception [7].

Judge Vosburg: I offer to show by the witness that he made inquiries at the theater from the person in charge and from Frank Ricca as to the whereabouts of Sylvester Z. Poli, and was told by them that he was then absent from the state and was in Connecticut.

Judge Kelly: That is objected to as incompetent, irrelevant and immaterial, vague and indefinite, especially that part of it which refers to somebody in charge, which is a statement of a conclusion by the counsel rather than an offer to show facts by the witness.

The Court: Objection sustained.

Exception [8].

"Q. Go on and tell what else you did? A. He said Mr. Poli——"

Mr. O'Malley: We ask that this witness be cautioned about giving the conversation.

The Court: He cannot tell what was said by some person unknown.

Exception [9].

"Q. Omitting the conversation, what did you do? A. I handed this paper to the gentleman in charge."

Judge Kelly: I move to strike that out, the words "in charge," as incompetent.

The Court: That may be stricken out.

Exception [10].

The plaintiff made the following offers:

Judge Vosburg: We now offer in evidence the notice identified by the witness:

Judge Kelly: The offer of the paper is objected to as incompetent, irrelevant and immaterial, there being no proof that it is a copy of the paper left at the Poli Theater, and there being no proof that there was any paper at the

Poli Theater served in the manner required by the act of assembly.

Judge Vosburg: We offer to follow this by the testimony of Mr. Merritt showing that this is an exact copy of the paper.

The Court: The objection is sustained. As I understand the witness he does not know the contents of the alleged paper he left with somebody, and he does not know the contents of the copy of the paper.

Exception [11].

Judge Vosburg: I now offer in evidence the paper identified by the witness.

Judge Kelly: We object to the offer for the reason that the paper offered has not been proven to be a copy of the paper left at Mr. Westover's or at least alleged to have been left at his office, or a copy of the paper left at the Poli Theater; for the further reason that it is irrelevant, immaterial and incompetent, because the leaving of a paper at the architect's office in Philadelphia, or the leaving of a paper in the manner testified to by the preceding witness, does not constitute a notice under the requirements of the acts of assembly.

The Court: The objection is sustained.

Exception [12].

The following questions were asked the witness, James S. Merritt:

"Q. Mr. Merritt, from the examination you made of those three papers, are you prepared to state as a fact whether or not they are correct copies, whether this is a correct copy of the two papers you signed and handed to Mr. Ingram?"

Judge Kelly: We object to that as asking the witness for a conclusion, and incompetent.

The Court: The objection is sustained.

Exception [13].

"Q. Will you from your examination state to the court and jury whether or not this paper is a correct copy of the two papers that you gave to Mr. Ingram?"

Judge Kelly: That is objected to for the same reason.

The Court: Objection sustained.

Exception [14].

The plaintiff made the following offer of proof while witness Edward Wager-Smith was on the stand.

Judge Vosburg: We offer to show by the witness on the stand that he was well acquainted with Albert E. Westover, the architect named in the contract offered in evidence in this case; that he had in 1907 throughout the whole year an office in the Keith's Theater Building in the city of Philadelphia; that the location described by Mr. Ingram is the correct location of the office.

Judge Kelly: We object to that as immaterial and irrelevant.

The Court: I sustain the objection.

Exception [15].

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* among others were (1, 2) refusal to take off nonsuit; (4–15) rulings on evidence, quoting the bill of exceptions.

*George Quintard Horwitz* and *A. A. Vosburg*, with them *Clarence Ballentine*, for appellant.—The following cases express the views of this court upon the dangers of going far afield to get other than a clear meaning out of an act, whose language is so plain that there can be no misunderstanding: Pittsburg v. Kalchthaler, 114 Pa. 547; Haddock v. Com., 103 Pa. 243; Thirsk v. Evans, 211 Pa. 239; Este v. R. R. Co., 27 Pa. Superior Ct. 521; Day v. Penna. R. R. Co., 224 Pa. 193; Thaler v. Construction Co., 40 Pa. Superior Ct. 331; Com. v. Hufnal, 4 Pa. Superior Ct. 301; Corry v. Corry Chair Co., 18 Pa. Superior Ct. 271; Lofink v. Schuette, 14 Pa. Dist. Rep. 558; Langenheim v. Anschutz-Bradberry Co., 2 Pa. Superior Ct. 285; Stoner v. Hileman, 27 Pa. C. C. R. 513; Haas v. Hay, 16 Pa. Dist. Rep. 504.

The service upon the person in possession at Scranton was good, sufficient and legal: Vandevort & Co. v. Wheeling Steel & Iron Co., 194 Pa. 118; Dixon v. Daub, 17 Pa. Superior Ct. 168; Mason v. Ammon, 117 Pa. 127; Stull v. Weigel, 20 W. N. C. 98; Walker v. Converse, 148 Ill. 622 (36 N. E. Repr. 202); Walters v. People, 21 Illinois, 178; Webb v. Rhodes, 28 Ind. App. 393 (61 N. E. Repr. 735).

*J. P. Kelly,* of *O'Brien & Kelly,* with him *Welles & Torrey, Warren, Knapp & O'Malley* and *John Memolo,* for appellees.

OPINION BY MR. JUSTICE ELKIN, May 17, 1911:

The answer to the question involved in this controversy depends upon whether there was proper service of notice of an intention to file a lien by a subcontractor. Section 8 of the Act of June 4, 1901, P. L. 431, requires a subcontractor, intending to file a claim, to give the owner written notice to that effect. What the notice shall contain and when it shall be served are provided for in the statute, which also contains the following provision: "Service may be made personally on the owner anywhere; but, if he cannot be served in the county where the structure or other improvement is situate, such notice and statement may be served on his architect or agent, or the party in possession of the structure or other improvement, and if there be no architect, agent or party in possession, it may be posted on the most public part of the structure or other improvement."

In the present case there was no personal service upon the owner and this question may therefore be eliminated. There was service of notice upon the architect while in the city of Philadelphia outside of the county in which the building is located. In addition to the service upon the architect there was service in the county upon a person alleged to be in possession, and the appellants rely upon one or both of these services of notice as meeting the statutory requirements. The learned court below held

that service upon the architect must be made in the county where the building is located and that service in Philadelphia was not sufficient. Appellants contend that service upon the architect may be made anywhere just as it can be upon the owner. This is a sharply defined issue and there is no decided case squarely ruling the question. The act does not provide for service upon the architect anywhere as it does in the case of the owner. In such cases it is important to keep in mind the fact that we are dealing with statutory liens against real estate. The proceeding is in rem and not in personam. The records of the county contain the information and data upon which the lien depends. It is true that an exact copy of the notice required by sec. 8 need not be set out in the claim, but such notice is an essential prerequisite to the filing of the lien and may always be inquired into upon the trial: Thirsk v. Evans, 211 Pa. 239. Service of this notice must be made in the manner prescribed by the statute, and failure to do so defeats the right to recover upon the claim filed. Inasmuch, therefore, as the lien is against the structure, the situs of which fixes the jurisdiction in which it becomes operative, it is but reasonable to hold that the legislature intended that the acts and things required to be done should take effect in the county where the building is located unless it is expressly provided that they may be done outside of the county. This is especially true as to the service of notice of an intention to file a lien. The act of 1901 does expressly provide for the service of notice upon the owner anywhere he may be found, but there is no such provision as to the architect, or agent or party in possession. The act provides that the service may be made on the architect, or agent or party in possession, "if he (the owner) cannot be served in the county where the structure or other improvement is situate." It would do violence to the legislative intention as indicated by the language used to hold that service might be made upon the architect or agent anywhere. The architect, agent and party in possession are

all coupled together in the same phrase and should be treated in the same way. It could scarcely be seriously argued that the party in possession could be served outside the county, and, if he could not be so served, why should a different rule be applied to the architect or agent who stand upon the same statutory plane with respect to the service of notice? If the legislature intended to authorize the service of notice upon the architect or agent outside of the county, it is not too much to require that it be done by language so plain as to leave no doubt about its meaning. We therefore hold that service of notice of an intention to file the lien upon the architect in the city of Philadelphia was not sufficient to meet the requirements of the act in this respect.

It is contended for appellants that there was service of notice upon a person in possession of the building. If such a service was in fact made, it would be sufficient. The proofs show that the notice was served upon a person in the building and the question to be determined is whether the person so served was "a party in possession" within the meaning of the act. This is largely a question of fact for the jury although when all the facts are ascertained it may be that the court would be warranted in saying that the service was not made upon the party in possession. It goes without saying that it is not every person in and around a building who may be regarded as a party in possession. However, in the present case appellants were denied the opportunity to prove the facts upon which they rely to show service upon a party in possession. The trial judge upon objection refused to admit many offers of testimony tending to establish the necessary facts. In this respect we think there was error. These offers were excluded largely on the theory that it was necessary to first establish the fact that the party served was in actual posesssion before proof of service and other incidental matters relied on could be admitted in evidence. Holding to this strict rule many of the offers were excluded. Evidence of this character must of necessity be introduced

step by step.  It might very well be that the testimony excluded in each offer would be insufficient standing alone to show service upon a proper person, but when supplemented by other evidence it might be sufficient to warrant a finding that service was made on a party in possession. At least appellants were entitled to prove all the facts tending to show that notice had been in fact served and that upon a party in possession.  As we review the record this opportunity was not given appellants.  As the record stands, with so many offers of testimony excluded, we cannot say as a matter of law whether the person served was a party in possession or not.  Under these circumstances it will be necessary to reverse the judgment in order that appellants may be afforded an opportunity to prove their case.  When the proofs are all in it will then be for the court or the jury, as the case may be, to say whether the service of notice was made upon a proper person.  These observations apply to the fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth assignments of error. In so far as any of these offers relate to service upon the architect, they were properly excluded, but they should have been received as bearing upon the question of service upon the party in possession.  When the case is again tried all offers of testimony should be confined to the one question of showing service of notice upon a party in possession.  In this connection it is competent to show what efforts were made to serve the owner, and why these efforts were not successful.

Judgment reversed and a venire facias de novo awarded.