# O'Kane, Appellant, *v.* Murray.

*Mechanics' liens—Agreement of sale—Improvements ordered by intended purchaser—Mechanics' Lien Act of June 4, 1901, P. L. 431 —Notice—Acceptance by attorney—Fraud—Practice, C. P.*

1. Unless a claimant brings his case within Section 4, of the Mechanics' Lien Act of June 4, 1901, P. L. 431, making liable an owner who shall suffer or permit any person, acting as if he were the owner, to make a contract for which a claim can be filed, without objecting thereto at the time, the lien attaches only to the interest or estate in the premises of the person for whom the building is erected.

2. Compliance with Section 21 of such act, requiring the claimant within one month after the filing of the claim to serve a notice upon the owner of the fact of the filing of the same, and to file an affidavit setting forth the fact and manner of such service, is a prerequisite to the validity of the lien. The acceptance of service by the attorney of a defendant is insufficient.

3. In a proceeding on a scire facias sur mechanics' lien it appeared that one of the defendants had entered into an agreement with the other for the sale of the former's house and lot to the latter at a stipulated price, a small payment being made at the time of the agreement, the delivery of the deed and payment of the balance to take place five months later; that a month later plaintiff entered into an agreement with the purchaser to provide all materials and perform the work of remodeling the building; that the balance of the purchase-money of the property was not paid when due and the sale was not completed at that time, and thereafter the owner leased the property to the intended purchaser with an option to purchase. After the completion of the work plaintiff filed a mechanics' lien, making the owner and intended purchaser parties defendant. No notice of the filing of the claim was given to the intended purchaser himself, but notice was accepted by his attorneys. It appeared that the owner frequently visited the premises during the progress of the improvements. *Held,* the lower court did not err in giving binding instructions for the

owner and in subsequently granting the vendee's motion for judgment non obstante veredicto.

4. In such case where the plaintiff had full knowledge of the relations of the owner and intended purchaser, the latter of whom was in possession and had an equitable interest therein, no liability was imposed upon the legal owner under Section 4, of the Act of June 4, 1901, P. L. 431; and plaintiff's contention that there was a conspiracy between the defendants to defraud him was unsupported by the evidence.

Argued Oct 19, 1915.   Appeal, No. 232, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1913, No. 2368, for defendants in case of Edward O'Kane v. James W. Murray and Joseph McCall, Jr. Before MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.   Affirmed.

Sci. fa. sur mechanics' lien.   Before CARPENTER, J.

The facts appear by the opinion of the Supreme Court.

The trial judge directed a verdict for the defendant, Murray, and subsequently granted the motion of Joseph McCall, Jr., for judgment for defendant n. o. v.   Plaintiff appealed.

*Error assigned*, among others, was in giving binding instructions for one defendant and entering judgment for defendant n. o. v. as to the other.

*William D. Grimes*, for appellant.

*Albert Barnes Smith*, for Joseph McCall, Jr., appellee.

*George J. Campbell*, with him *Walter S. Lobingier*, for James W. Murray, appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1916:

Joseph McCall, Jr., one of the defendants, being the owner of a house and lot at 6300 Butler street, Pittsburgh, agreed to sell the premises to James W. Murray,

the other defendant, by a contract in writing dated April 30, 1912, for $3,950, and received $150 as part of the purchase-price, the remainder to be paid on September 1, 1912, when the deed was to be delivered. Murray took possession of the premises and by a written agreement, dated June 3, 1912, between himself and O'Kane, the plaintiff, the latter agreed to provide all materials and perform all the work for remodeling the building on the premises which the former had purchased from McCall. The balance of the purchase-money for the property was not paid to McCall, as provided in the contract between him and Murray, and on October 30, 1912, McCall leased the property to Murray at a rental of $50 per month, with an option to purchase it for $3,000.

The work on the building was completed by the plaintiff in September, 1912, and in November of that year he filed a mechanic's claim against "James W. Murray and Joseph McCall, Jr., owners or reputed owners and contractors.". An affidavit was filed that a written notice, signed by the plaintiff and directed to Murray and McCall, as owners or reputed owners, of the filing of the mechanic's lien was served on October 6, 1912, on McCall "by leaving a true and attested copy thereof at his dwelling house at Madison avenue, Bellevue, Allegheny Co., Pa., with an adult member of his family and making known the contents thereof"; and that service of the notice was accepted by Murray's attorneys on December 3, 1912.

A scire facias was issued on the claim to which affidavits of defense were filed by Murray and McCall. In his affidavit of defense, Murray avers that he has a defense to the whole of the plaintiff's claim and denies that he "was served with notice of the filing of the claim within one month after the filing thereof, nor is there an affidavit of service thereof as required by the act of assembly relating to the filing of mechanics' liens and regulating the same, and avers that more than thirty days have elapsed since the filing of said mechanic's

lien upon which a sci. fa. was issued." McCall, in his affidavit, averred that he had a defense to the whole of the plaintiff's claim and set forth, inter alia, his agreement to sell the property to Murray, that Murray immediately took possession, under the agreement, and entered into the contract with plaintiff for the remodeling of the premises, denied that Murray in making the contract acted as if he were the owner of the legal title to the property, averred that the plaintiff entered into the contract and made the improvements to the property with full knowledge of the interest which Murray had in the property and that the legal title to the property was in McCall as security for the unpaid purchase-money, and that the plaintiff knew McCall was not in any way a party to the contract and his interest in the property would not be subject to a lien for the work done and materials furnished to Murray on the contract. The replication of O'Kane, filed to McCall's affidavit of defense, admitted that he knew of the contract of sale between Murray and McCall, and averred that McCall asked the plaintiff to hurry the work so that Murray could start the saloon business and pay the balance of the purchase-money, that Murray was an actual "owner" of an interest in the property within the meaning of Section 1, of the Act of June 4, 1901, and that while McCall did not sign the building contract his acquiescence in and partial supervising of the improvements made him a party thereto in law and equity.

On the trial of the cause, the court gave binding instructions for McCall, holding that the lien as to McCall's interest was void; and the jury returned a verdict against Murray for the full amount of the plaintiff's claim. The court sustained a motion by Murray for judgment non obstante veredicto on the ground that the acceptance of notice by his attorneys of the filing of the lien was not a service of the notice as required by the act of assembly, and that the filing of a copy of the notice of filing the lien with an endorsement of the ac-

ceptance of service by the owner's attorneys was not a compliance with the requirement of the statute. The plaintiff has taken this appeal, and alleges that the court erred in directing a verdict for McCall and in entering judgment non obstante veredicto in favor of Murray.

The plaintiff, appellant, has filed four assignments of error. The first two allege error in excluding testimony offered by plaintiff to establish McCall's liability, the third, in directing a verdict for McCall, and the fourth, in entering judgment for Murray.

The plaintiff contends that McCall is liable because he was the owner of the real estate within contemplation of Section 4, of the Act of June 4, 1901, P. L. 431, which imposes liability upon an owner of real estate who shall knowingly suffer or permit any person, acting as if he were the owner, to make a contract for which a claim can be filed, without objecting thereto at the time. It is further claimed on the part of the plaintiff that McCall and Murray conspired together to improve their property and prevent O'Kane's recovery against the legal owner, and that the testimony offered by the plaintiff and excluded by the court tended to show a conspiracy to defraud the plaintiff. We do not agree with the plaintiff's position, and think that the court correctly ruled the case on the trial by directing a verdict for the defendant, McCall. The Mechanics' Lien Act of 1901 permits a contractor to file a lien against the owner in fee or one having any estate or interest in the property who, by contract or agreement, express or implied, contracts for the erection of the structure or other improvement, and provides that the claim shall bind only the interest of the party named as owner of the property at the time of the contract, or subsequently acquired by him. Unless, therefore, a claimant brings himself within Section 4 of the act, the lien attaches only to the interest or estate in the premises of the person for whom the building is erected: Weaver v. Sheeler, 118 Pa. 634; Weaver v. Sheeler, 124 Pa. 473, and a sale

obtained on a judgment thereon will pass only such estate or interest of the person erecting the building. The equitable owner of real estate cannot by his contract, under the Act of 1901, bind the holder of the legal title or his interest in the real estate for work done or materials furnished for a building erected on the premises. He could bind his own estate or interest in the land under prior legislation: Keller v. Denmead & Son, 68 Pa. 449, but that was the limit of his power since the Act of April 28, 1840, P. L. 467, to encumber the property by a mechanic's lien.

The plaintiff's contention that McCall was an owner of the property in question within the purview of the fourth section of the Act of 1901 is without merit under the facts of this case. It is conceded that prior to the time Murray entered into the contract with the plaintiff for the improvement of the real estate that McCall had contracted in writing with Murray to convey to him, and that Murray was in possession of it under the agreement. The plaintiff admitted in his replication to McCall's affidavit of defense and also testified on the trial, that prior to the beginning of the improvements he knew of the contract of sale between Murray and McCall. McCall, therefore, held the legal title while Murray, who was in possession, had an equitable interest in the property. The contract for the improvement of the property was made by Murray, as the written agreement discloses, and McCall was not a party to it. The mechanics' lien law authorized the filing of a lien against Murray's interest for any sum due for work done and materials furnished under the contract. It is, therefore, difficult to see how, under these facts, the fourth section of the Act of June 4, 1901, can apply. Murray, and not McCall, was the "owner" within contemplation of the mechanics' lien law. Murray had the right to improve the property, and it was expected he would do so when the purchase was made, as it was to be remodeled for saloon purposes. He had possession and McCall could not in-

terfere with that possession or with any improvements he desired to make. The property belonged to Murray subject only to the payment of the balance of the purchase-money on or before the following September when he would become the holder of the legal title. In the meantime, he was the owner and in possession with the right to contract to improve and subject his interest to a lien for such improvement. We do not think the fourth section of the Act of 1901 covers the case. In view of the uncontroverted facts in the case, therefore, the testimony, which is the subject of the first and second assignments of error, was properly excluded.

There is nothing in the case to warrant the contention of the plaintiff that there was any conspiracy on the part of McCall and Murray to defraud the plaintiff. The testimony, if admitted, would not have been sufficient to sustain his contention, under the facts of the case, of which the plaintiff admits he had full knowledge at the time he agreed with Murray to make the improvements. He knew the exact condition of the title, that McCall held the legal title, and that Murray had only an equitable interest under the contract previously entered into between the parties, and that his written agreement to furnish the labor and materials for improving the property was signed by Murray alone. He was, therefore, as fully cognizant of all the facts, relating to the improvement, as was either Murray or McCall. There was no deception or fraud practiced upon him, and the excluded testimony, as appears by the offer, would not have disclosed any fraud had it been admitted. The fact that McCall visited the premises frequently, inquired about the progress of the work, urged the contractor to proceed as rapidly with it as possible, and that he discussed with the contractor the changes to be made, merely disclosed the interest which McCall took in the improvement of the property, and not any fraudulent purpose on his part to mislead the plaintiff as to how the title was held or who had contracted with him

for making the improvements. McCall had unquestionably an interest in having the property improved and that as speedily as possible. He had sold it to Murray for $3,950, and had received a payment thereon of only $150. The balance of the purchase-money was to be paid on or before the following September with the right to the owner to anticipate any of the other payments. McCall was anxious that the improvements be completed so that the saloon could be opened and these payments be made. The facts merely disclose the interest that McCall took in the early completion of the improvements. Binding instructions for McCall were properly given by the court on the trial of the cause.

Section 21, of the Act of 1901, requires the claimant within one month after the filing of the claim to serve a notice upon the owner of the fact of the filing of the same, and to file of record in the proceedings an affidavit, setting forth the fact and manner of such service. This section also provides that a failure to serve the notice and file the affidavit within the specified time shall be sufficient ground for striking off the claim. The notice of the filing of the claim was not given to Murray, but service of the notice was accepted by his attorneys. The plaintiff contends that a substantial conformance with this section of the statute is all that is required, and that the section will not be construed to be mandatory unless it would be inequitable to allow the lien to remain. This contention entirely overlooks the well established rules applicable to the interpretation of mechanics' liens. The language of the provision is clearly mandatory and if the claimant fails to serve the notice and file the required affidavit, within one month after the filing of the claim, it is ground for striking off the claim. A compliance with the provision is a prerequisite to the validity of the lien, and the failure to observe it invalidates the lien. The purpose of the provision is apparent. It is to protect the owner by furnishing him an opportunity while the facts are accessible to

ascertain if the claim is correct, if the labor and materials were furnished as set forth in the lien, and if the claim has been properly and legally entered so as to bind his real estate.   In a large building operation there may be many parties entitled to file claims, and it is important to the owner that the several claimants give him the notice required by the statute.   The manifest importance of the provision clearly shows that the legislature intended it should be mandatory, and the failure to comply with it should invalidate the lien.   The right to file a mechanic's lien, as has been uniformly held by all the courts, is of statutory origin.   No such right existed at common law.   It is class legislation and, therefore, must be strictly construed.   If a party desires to avail himself of it, he must comply strictly with the provisions of the statute conferring the right.   Nothing is presumed in favor of the lien: Schively v. Radell, 227 Pa. 434, 443.   When the act of assembly directs specifically that a particular thing shall be done in order to establish a claim, substantial conformity will not answer;   there must be a compliance with the requirement:   Westmoreland Guarantee Bldg. & Loan Assn. v. Connor, 216 Pa. 543, 549.   The notice directed to be given by this section of the statute is equally as important as the notice of an intention to file the lien required by Section 8 of the act, and in the recent case of Merritt v. Poli, 231 Pa. 611, 617, we held that "service of this notice must be made in the manner prescribed by the statute, and failure to do so defeats the right to recover upon the claim filed."   Where service of the scire facias on the claim and to revive the judgment on the claim cannot be made personally, the act provides specifically the manner in which it may be otherwise made.   The statute is explicit as to service of notice on the owner and directs that within the statutory period notice shall be given him, and that an affidavit shall be filed of record setting forth the fact and manner of service of the notice.   The penalty for failing to observe the

command of the statute is, as the act provides, avoiding or striking off the lien and thereby depriving the claimant of the special provision made by the act for enforcing the claim. The act might have provided that notice be given the owner, his agent or attorney, or that notice might be served upon the owner by leaving a copy at his residence, or that service of notice might be accepted by his agent or attorney, as provided in serving the scire facias, but the only department of the government, having the authority to enact the legislation, has not seen proper to make such provision for service of the notice to the owner of property encumbered by the lien, and that is conclusive as to our right to determine that the notice shall be given otherwise than is specifically directed in the statute. We can have no concern with the wisdom or propriety of this or any other provision of the statute; that is solely for the legislative department of the government.

Analogous provisions in statutes of other states authorizing the filing of mechanic's claims have received a like construction: Street Lumber Co. v. Sullivan, 201 Mass. 484; Gross v. Butler, 72 Ga. 187; Conway & Co. v. Crook, 66 Md. 292; Peck v. Hinds, 68 Ill. App. 391; Ryan v. Kelly, 9 Mo. App. 396; Hannah & Lay Mercantile Co. v. Mosser, 105 Mich. 18.

We are of opinion that Section 21, of the Act of 1901, is mandatory, and that the acceptance of notice of the filing of the lien by Murray's attorneys was not a compliance with the provision contained in the section, and, therefore, the learned court below was right in entering judgment in his favor non obstante veredicto.

The judgment is affirmed.